UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT JOHN EDWARDS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KALMAR INDUSTRIES OY AB, and<br>CARGOTEC FINLAND OY,<br><br>　　　　　Defendants. | CASE NO. 3:14-cv-05241-RJB<br><br>ORDER ON PLAINTIFF'S MOTION<br>FOR PARTIAL SUMMARY<br>JUDGMENT AND FOR<br>SANCTIONS |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment and for Sanctions. Dkt. 59. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Dkts. 63, 68.

I. **Motion for Partial Summary Judgment**

　A. Background

1      Plaintiff requests this Court to hold that the subject straddle carrier, designed and
2 manufactured by Defendant Cargotec, "was not reasonably safe as designed and constructed as a
3 matter of law." Dkt. 59 at 2.

4      Plaintiff, employed by the Port of Tacoma to move shipping containers by operating a
5 straddle carrier, sustained serious job-related injuries in a tip over incident on August 30, 2012.
6 According to Plaintiff, the incident could have been avoided if Defendant, who designed and
7 manufactured the straddle carrier, had installed an optional safety device, the "Active Stability
8 Control Device ("ASCD"). Dkt. 59 at 2. The ASCD reduces engine RPM, leading to mild engine
9 braking and speed reduction, if the straddle carrier surpasses a certain safety margin. *Id*.
10 Defendant's Fed. R. Civ. P. 30(b)(6) witness, Ari Tapani Hirvonen, had no knowledge of whether
11 Defendant discussed the ASCD with the Port of Tacoma in its 2008 straddle carrier purchase,
12 which included the subject vehicle. *Id*. at 3; Dkt. 60-3 at 15.

13      Mr. Hirvonen testified that (1) straddle carriers are prone to tip over, depending on speed
14 and turning radius, (2) straddle carrier operators like Plaintiff work in an environment where there
15 is pressure to load and unload shipping containers as quickly as possible, and (3) installing the
16 ASCD would be consistent with a 2006 directive of the European Parliament, as well as
17 recommendations of the International Standardization Organization and the American National
18 Standard Institute. *Id*. at 3-7.

19      Defendant disputes that the ASCD was available at the time the subject straddle carrier
20 was purchased and that installation of the ASCD would have prevented the incident. Dkt. 63 at 1,
21 6. According to Defendant, the subject straddle carrier was reasonably safe as designed because it
22 was equipped with multiple safety devices, including a stability sensor, depicted by a digital
23 screen and graphic bar display, mild engine braking, triggered when an operator releases the
24

engine throttle, and audible warning tones, complete with variable warnings based on the level of risk. *Id*. at 5, 6. Defendant's accident reconstruction expert, John Hunter[1], has concluded that installation of the ASCD "would not have prevented this tip-over." *Id*. at 6. *See* Dkt. 67 at 14. Defendant contends that Plaintiff is to blame for the incident, due to Plaintiff's disregard for these safety control devices, drug use, and high rate of speed around a turn with an insufficiently wide turn radius. *Id*.

    B. <u>Standard for Summary Judgment</u>

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

---

[1] The admissibility of Mr. Hunter's testimony is the subject of Plaintiff's Motion in Limine. Dkt. 61.

1         The determination of the existence of a material fact is often a close question.  The court

2 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

3 e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

4 *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

5 the nonmoving party only when the facts specifically attested by that party contradict facts

6 specifically attested by the moving party.  The nonmoving party may not merely state that it will

7 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

8 to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

9 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

10 be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

11         C.  Discussion

12         Plaintiff requests this Court to hold that the subject straddle carrier was not reasonably

13 safe as designed and constructed as a matter of law. Plaintiff requests that the Court make this

14 finding by applying to two "tests" pursuant to subsections (1)(a) and (3) of RCW 7.72.030 of the

15 Washington Product Liability Act (WPLA). Subsection (1)(a), known as the "risk utility test,"

16 provides:

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed . . .
>    (a) A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product[.]

RCW 7.72.030(1)(a) (firearm exception excluded). *Soproni v. Polygon Apartment Partners*, 137 Wn. 2d 319, 326 (1999). Subsection (3), known as the "consumer expectations test," provides that "[i]n determining whether a product was not reasonably safe under this section, <u>the trier of fact</u>

1  shall consider whether the product was unsafe to an extent beyond that which would be

2  contemplated by the ordinary consumer." RCW 7.72.030(3) (emphasis added).

3       Issues of material fact remain as to whether the subject straddle carrier was reasonably

4  safe as designed and constructed under both tests. Applying the risk utility test reveals issues of

5  fact about the likelihood of harm caused by the lack of the ASCD. For example, Defendant's Fed.

6  R. Civ. P. 30(b)(6) witness conceded that the ASCD has (at least some) safety benefit, but pointed

7  to other safety measures, such as audible warning signals, which overlap with the ASCD's

8  functionality. Further, Defendant's accident reconstruction expert, John Hunter, states that

9  installing the ASCD on the subject straddle carrier would not have made a difference to whether it

10 tipped over. Finally, many questions remain unanswered. For example, at the time that the Port of

11 Tacoma purchased the subject straddle carrier, did Defendant market the ASCD to other buyers?

12 How did the ASCD effect the cost of production and price offered to buyers? Did the ASCD

13 technology change over time? Did the ASCD later become standardized on all straddle carriers?

14 These are all unresolved questions of fact properly placed before a trier of fact.

15       Applying the consumer expectation test to the present record also reveals issues of

16 material fact as to whether the straddle carrier was reasonably safe as designed and manufactured.

17 Although Defendant's Rule 30(b)(6) expert agreed with the general applicability of standards of

18 the European Parliament, the International Safety Organization, and the American National

19 Standard Institute, and although "it may be unreasonable for a consumer to expect product design

20 to depart from legislative or administrative or regulatory standards," *Soproni*, 137 Wn.2d at 327,

21 nothing in the record particularizes the design that Defendant should have made as a matter of

22 law. For example, Defendant's 30(b)(6) expert agreed with the guideline from said institutions,

23 which "recommend automatic controls limiting speed to prevent speed from becoming a hazard,"

24

ORDER ON PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND FOR
SANCTIONS- 5

Dkt. 59 at 7, but the expert did not concede the guideline's application to all designs in all cases. Further, the text of the consumer protection test invites the issue of whether a product is reasonably safe to be resolved by the trier of fact. 7.72.030(3) ("the trier of fact shall consider…").

Defendant's motion for partial summary judgment as to whether the subject straddle carrier was reasonably safe as designed and constructed should be denied.

II. **Motion for Sanctions**

A. Background

Plaintiff requests sanctions on the basis that Defendant "played loose with the truth when it falsely denied allegations in the complaint on the ground of insufficient information." Dkt. 59 at 16. For example, the Complaint, at ¶65, alleges that "[t]he effort to achieve as short a loading/unloading time as possible causes some pressures on the operators of container handling equipment, who have to perform the moving of containers as quickly as possible." Dkt. 60-3 at 8, 9. Defendant provided the answer, "defendants lack sufficient information to form a belief as to the truth of the allegation," but at Mr. Hirvonen's Fed. R. Civ. P. 30(b)(6) deposition, Mr. Hirvonen admitted that the exact language in the Complaint is also found in Defendant's straddle carrier patent application. *Id*.

Defendant states that it did not review its Answer prior to filing it. Defendant points the finger at its previous attorney, Matthew Boyle, who did not submit the Answer to Defendant prior to filing, and who was ultimately removed by Defendant as uncommunicative, a pattern Mr. Boyle displayed with other clients around the same time. Dkt. 63 at 7. Defendant takes issue with the motion on procedural grounds, because Plaintiff did not file the motion separate from the

motion for partial summary judgment and did not serve on Defendant a copy of the motion more than 21 days prior to filing.

      B. <u>Standard for Fed. R. Civ. P. 11(c) sanctions</u>

Fed. R. Civ. P. 11(b) requires that "denials of factual contentions [be] warranted on the evidence or, if specifically so identified, [be] reasonably based on belief or lack of information." Courts may impose sanctions for violations of Rule 11(b) "after notice and a reasonable opportunity to respond[.]" Fed. R. Civ. P. 11(c)(1). Subsection (c)(2) sets out the procedure for filing a motion for sanctions:

> [the motion] must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

      C. <u>Discussion</u>

Defendant's Answer contains multiple denials based on "lack of sufficient information," a representation that Plaintiff argues is false, *see* Fed. R. Civ. P. 11(b)(4), given that the Complaint is based on Defendant's own straddle carrier patent applications. However, even if Plaintiff is correct, Plaintiff did not serve its motion for sanctions on Defendant prior to filing the motion, as the rule requires. Fed. R. Civ. P. 11(c)(2). If Plaintiff had served the motion on Defendant, Defendant may have amended its Answer, which would serve an underlying purpose of the rule, to promote conflict resolution without the need for court intervention. The motion was also not filed separately from the motion for partial summary judgment, as the rule requires. Fed. R. Civ. P. 11(c)(2).

Should Plaintiff comply with the procedural requirements of Fed. R. Civ. P. 11, the Court may yet reach the merits of Plaintiff's motion. At this stage, Plaintiff's motion for sanctions should be denied without prejudice.

* * *

Therefore, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment and For Sanctions (Dkt. 59) is:

DENIED as to the motion for partial summary judgment, and

DENIED WITHOUT PREJUDICE as to the motion for sanctions.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 20th day of September, 2016.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge